IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL JOSE CERVIN,<br><br>                  Petitioner,<br><br>vs.<br><br>WILLIAM MUNIZ, Acting Warden, Salinas Valley State Prison,[1]<br><br>                  Respondent. | No. 2:13-cv-01422-JKS<br><br>MEMORANDUM DECISION |

Manuel Jose Cervin, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Cervin is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Salinas Valley State Prison. Respondent has answered, and Cervin has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

In resolving his claims on direct appeal, the Court of Appeal recounted the facts of this case as follows:

> Late one night, as the victim and his girlfriend drove up to the victim's house and prepared to turn left into the driveway, they found their way blocked by an occupied car. When the car did not move, the victim honked the horn. The blocking car drove down the street, the couple turned into the driveway, and the victim got out. The other car, which had driven forward a few houses, backed up and blocked the driveway again. The driver rolled down the window and the occupants said something to the victim, who raised his hands and yelled, "What the fuck?" The occupants of the car were smirking. The passenger in the front seat leaned toward the driver's side of the car, pointed a gun out of the window and shot the victim, killing him. The car then sped off.

---

[1] William Muniz, Acting Warden, Salinas Valley State Prison, is substituted for R.T.C. Grounds, former Warden. FED. R. CIV. P. 25(d).

>	A subsequent investigation revealed [Cervin] to be the driver of the car and a leader of a gang associated with the Nortenos.  The three other passengers were fellow gang members.  One had shown [Cervin] a gun earlier in the day.  The group subsequently went to a park and then a pizza parlor where [Cervin] admired the video game shooting skills of another person, and stated that he wanted to shoot someone.
>	An information charged [Cervin] with first degree murder and alleged a firearms and gang enhancement.
>	At trial, an expert witness described gang behavior, particularly that of the Nortenos.  In response to a series of hypothetical questions, he testified that gang members often have their weapons with them and occupants of a car would have known of their presence.  He explained the importance of maintaining respect in a gang, and said that a gang member would need to respond to any perceived disrespect to avoid being thought of as weak.
>	[Cervin] admitted being a gang member and the driver of the car, but argued that the shooting was unconnected to gang activity.
>	The jury acquitted [Cervin] of first degree murder but convicted him of the lesser included offense of second degree murder.  It also found the charged enhancements to be true.  The court sentenced [Cervin] to an aggregate prison term of 40 years to life. . . .

*People v. Cervin*, No. C060848, 2012 WL 1021712, at *1 (Cal. Ct. App. Mar. 27, 2012).

Cervin appealed through counsel, arguing that: 1) the trial court violated constitutional guarantees in refusing to bifurcate the gang allegation; 2) a gang expert offered improper opinion testimony; 3) there was insufficient evidence to support the gang enhancement; and 4) the court erred in instructing the jury on the natural and probable consequences doctrine.  The Court of Appeal affirmed the judgment of conviction in reasoned opinion dated March 27, 2012.  *Id*. at *5.  Cervin then filed a counseled petition for review, in which he raised the same claims.  The California Supreme Court summarily denied review on June 27, 2012.  Cervin did not file any petitions for writ of habeas corpus with the state courts.

Cervin filed his *pro se* Petition with this Court on July 9, 2013.  Respondent concedes that Cervin exhausted his claims in state court and does not contest the timeliness of the Petition.

## II. GROUNDS RAISED

In his Petition before this Court, Cervin raises the same claims he unsuccessfully raised on direct appeal. First, he argues that the trial court violated his right to due process and a fair trial in refusing to bifurcate the gang allegation. Second, Cervin claims that a gang expert offered improper opinion testimony. Third, Cervin contends that there was insufficient evidence to support the gang enhancement. Finally, Cervin argues that the trial court erred in instructing the jury on the natural and probable consequences doctrine.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Failure to bifurcate the gang allegation

Cervin first argues that the trial court violated his rights to due process and a fair trial in refusing to bifurcate the gang allegation from the substantive offense. The Court of Appeal denied Cervin relief on this claim, concluding that the trial court, which determined that the gang evidence was highly probative and outweighed any potential prejudice because it provided context for the shooting, did not err under state law in refusing to bifurcate the enhancement. *Cervin*, 2012 WL 1021712, at *2.

The United States Supreme Court has never held that a criminal defendant has a federal constitutional right to bifurcation. *Spencer v. Texas*, 385 U.S. 554, 568 (1967) ("Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure."); *see also Marshall v. Lonberger*,

459 U.S. 422, 438 n.6 (1983) (reaffirming *Spencer*).  Therefore, a court may grant habeas relief based on a state court's decision to deny a motion for bifurcation only if the joint trial was so prejudicial that it denied a petitioner his right to a fair trial.  *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (a court must consider whether "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence"); *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991) ("The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate.") (citation omitted); *Studebaker v. Uribe*, 658 F. Supp. 2d 1102, 1125 (C.D. Cal. 2009).

     Cervin has not met his burden of establishing that the failure to bifurcate the gang allegation from the substantive offense violated his right to a fair trial.  The gang evidence was relevant to demonstrate Cervin's motive and state of mind in responding to the minor "disrespect" the victim allegedly displayed in the presence of Cervin's fellow gang members.  The gang expert was able to explain that Cervin did not have the option of ignoring the honking if other gang members were present because he needed to maintain his honor and status within the gang.  Without this evidence, as the Court of Appeal noted, there would have been no context for the shooting and the jury would have been left without valuable information necessary to determine if this was in fact a homicide.  This is not a case where the failure to bifurcate allowed "evidence . . . to be introduced in a trial where the evidence would otherwise be inadmissible." *Sandoval v. Calderon,* 241 F.3d 765, 772 (9th Cir. 2000); *Studebaker*, 658 F. Supp. at 1125.  The evidence was highly probative and not outweighed by any prejudicial effect, and accordingly the

failure to bifurcate the gang enhancement did not render Cervin's trial fundamentally unfair. Cervin therefore cannot prevail on this claim.

Improper expert testimony

Cervin next contends that the gang expert gave improper opinion testimony as to his knowledge, intent, and guilt. Cervin also suggests that the expert erroneously defined a "criminal street gang." The Court of Appeal denied Cervin relief in a reasoned opinion. *Cervin*, 2012 WL 1021712, at *3-4.

Under California law, expert testimony on criminal street gangs is admissible to prove the elements of the criminal street gang substantive offense and the gang enhancement. *See People v. Jasso*, 150 Cal. Rptr. 3d 464, 484 (Cal. Ct. App. 2012) (relying on expert testimony in part to support a conviction for the substantive offense); *see also People v. Hernandez*, 94 P.3d 1080, 1085 (Cal. 2004) ("In order to prove the elements of the criminal street gang enhancement, the prosecution may, as in this case, present expert testimony on criminal street gangs."). Cervin argues that the testimony deprived him of due process in violation of federal law, but under federal law, there is no support for "the general proposition that the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact." *Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009). "[I]t is 'well-established . . . that expert testimony concerning an ultimate issue is not per se improper.' Although '[a] witness is not permitted to give a direct opinion about the defendant's guilt or innocence . . . an expert may otherwise testify regarding even an ultimate issue to be resolved by the trier of fact.'" *Id.* (internal citations omitted); *see also Duvardo v. Giurbino*, 410 F. App'x 69, 70 (9th Cir. 2011) (noting that the Supreme Court "has never held that the admission of expert testimony on an

ultimate issue to be resolved by the trier of fact violates the Due Process Clause"); *Briceno v. Scribner*, 555 F.3d 1069, 1077-78 (9th Cir. 2009) (rejecting claim that gang expert's testimony that "the crimes [the defendants] were involved in benefit the gang itself, the action that they have done to glorify the gang" was unconstitutional because "there is no clearly established constitutional right to be free of an expert opinion on an ultimate issue"). In any event, as the Court of Appeal noted, the expert answered questions about hypotheticals that tracked the facts of the case, and did not express an opinion on Cervin's particular intent or guilt. Cervin therefore cannot prevail on this claim either.

      Cervin also suggests that the expert erroneously defined the term "criminal street gang." However, the trial court expressly told the jury that its instructions would define any terms with legal meanings, and the court instructed the jury on the correct definition of a "criminal street gang" and its elements as well as the prosecution's burden of proving each allegation. This Court must presume that the jury followed those instructions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and thus even if the expert's definition was erroneous, Cervin cannot establish prejudice.

Insufficient evidence to support the gang allegation

      Cervin next argues that there was insufficient evidence to support the gang enhancement because he was not aware of the gun in the vehicle or the passenger's intent to shoot the victim. The Court of Appeal denied Cervin relief on this claim, concluding as follows:

> Section 186.22, subdivision (b)(1), the gang enhancement statute, requires that the underlying crime be "committed for the benefit of, at the direction of, or in association with any criminal street gang, *with the specific intent to promote, further, or assist in any criminal conduct by gang members.*"
> [Cervin] points out that the prosecution offered no evidence, other than the gang expert's testimony, that the shooting was committed to "promote, further and assist" the

>   criminal conduct of the Nortenos.  Expanding on the arguments we have already
>   addressed, he asserts that this testimony is insufficient to support his conviction. The
>   California Supreme Court has held otherwise.
>
>> "'Expert opinion that particular conduct benefited a gang' is not only permissible
>> but can be sufficient to support [a] . . . section 186.22, subdivision (b)(1), gang
>> enhancement." (*People v. Vang, supra,* 52 Cal. 4th at p. 1048.)
>>
>> The expert's testimony was reasonable, credible and of solid value, providing
>> substantial evidence from which a reasonable trier of fact could find the gang
>> enhancement to be true.  (*See People v. Albillar* (2010) 51 Cal. 4th 47, 59-60.)  [Cervin's]
>> claim to the contrary is unpersuasive.

*Cervin*, 2012 WL 1021712, at *5.

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).  It is through this lens that this Court must view an insufficiency of the evidence claim.

Cervin was the leader of a gang associated with the Nortenos.  He was the driver of the car, and the other passengers were fellow gang members.  Cervin told a video gamer earlier in the day that he wanted to shoot someone.  The expert testified about the importance of "respect" in gang culture, that it was "very common" for a group of Nortenos to be armed, that one gang member would likely know if another in his car was carrying a weapon, and that the primary activities of the Nortenos included drive-by shootings, assaults and murder.  The expert testified that if gang members were honked at by an unknown car, it could be considered a sign of disrespect, or a "nonverbal assault."  A gang member would "probably be confrontational" in response and "escalate the pain," especially if other gang members were in the car.  According to the expert, it was likely that a fistfight, or, if the members of the gang declined to open their car doors, a shooting would result from the confrontation, and that such a shooting would benefit the gang because word would spread that the Nortenos assaulted someone outside of their area after

being disrespected.  "[T]heir status elevates, because it shows that they're a gang that's aggressive and has to be dealt with."  In other words, through such violence, the "status of their gang grows."

The Court agrees with the state court's determination that there was sufficient admissible evidence to prove the elements required for finding a criminal street gang enhancement.  The evidence before the jury does not compel the conclusion that no rational trier of fact could have concluded that Cervin acted "in association with" the Norteno gang and that he did so "with the specific intent to promote, further, or assist in any criminal conduct by gang members" pursuant to Penal Code § 186.22(b)(1).  *See People v. Romero*, 43 Cal. Rptr. 3d 862, 865 (Cal. Ct. App. 2006) (explaining that § 186.22 enhancements may be proven with expert testimony about criminal street gangs).  Cervin's contention that the prosecution failed to establish the requisite specific intent is without merit.  *See Emery v. Clark*, 643 F.3d 1210, 1215 (9th Cir. 2010) (sufficient evidence existed to satisfy specific intent component of gang enhancement where defendant assisted fellow gang member in committing underlying crime); *Bonilla v. Adams*, 423 F. App'x 738, 739-40 (9th Cir. 2011) (testimony that defendant committed a robbery with two other gang members and expert testimony that explained in hypothetical terms how such offenses could be useful to the gang as a whole was sufficient to establish specific intent element of gang enhancement).  Cervin therefore is not entitled to relief on this claim.

<u>Instructional error</u>

Cervin next argues that the trial court erred in instructing the jury on the natural and probable consequences doctrine.  The Court of Appeal rejected this claim on direct appeal, concluding as follows:

> [Cervin] contends the court erred in instructing the jury on the natural and probable consequences doctrine because that theory is applicable only in cases of escalating violence, not when the target crime is simple assault. We disagree.
> An individual is responsible not only for the offense he intended to facilitate or encourage, but also for any other crime that is the natural and probable consequence of the target offense. (*People v. Prettyman* (1996) 14 Cal. 4th 248, 261.) "Liability under the natural and probable consequences doctrine 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.' [Citation.]" (*People v. Medina* (2009) 46 Cal. 4th 913, 920.)
> Here, the evidence established that [Cervin] knew a passenger in his car was armed with a gun. [Cervin] initially drove away from the victim but then returned to respond to a perceived act of disrespect. This evidence, coupled with the gang expert's testimony about gang behavior and the likelihood of a shooting, provided ample basis for the natural and probable consequences instruction. A reasonable person in [Cervin's] position would have known that the shooting under these circumstances was a reasonably foreseeable consequence of an aided and abetted assault. (*See People v. Medina, supra,* 46 Cal. 4th at pp. 926-928.) There was no error.

*Cervin*, 2012 WL 1021712, at *5.

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks*, 528 U.S. 225 at 234; *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle v. McGuire*,

502 U.S. 62, 72 (1991).  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.  *Id.* at 72-73.  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."  *Id*.  Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law.  *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process."  *See id.* at 156-57; *Estelle*, 502 U.S. at 72.

Cervin fails to satisfy this heavy burden.  First, this Court must defer to the Court of Appeal's conclusion, as a matter of state law, that the natural and probable consequences doctrine applies to the circumstances of this case.  Second, the court was not unreasonable in concluding that the evidence supported such an instruction.  Cervin's actions, combined with the expert's testimony on gang culture and the likelihood of a shooting under the circumstances, provided the basis for such an instruction.  A reasonable person in Cervin's position—that of a gang leader disrespected in view of his fellow gang members in possession of a firearm—would have known that the shooting under these circumstances was a reasonably foreseeable consequence of an aided and abetted assault.  Cervin therefore cannot prevail on this claim.

V. CONCLUSION AND ORDER

Cervin is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 15, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge